# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| KIMBERLY S. GRIFFIN,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 3:13-CV-1179-JEM |
| CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kimberly S. Griffin on November 13, 2013, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 27], filed by Plaintiff July 31, 2014. Plaintiff requests that the decision of the Appeals Council be reversed and remanded for further proceedings. On November 13, 2014, the Commissioner filed a response, and on November 26, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On November 17, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on September 1, 2010. Plaintiff's application was denied initially and upon reconsideration. On June 1, 2012, Plaintiff appeared with her attorney and testified at a hearing before an administrative law judge ("ALJ"); a vocational expert also testified. ALJ Jonathan Stanley denied benefits on June 20, 2012. The Appeals Council accepted review and denied benefits on October 15, 2013, making the Appeals Council's decision the final Agency decision.

The Appeals Council made the following findings under the required five-step analysis and adopted the ALJ's findings and conclusions regarding whether Griffin is disabled:

> 1. The claimant met the special earnings requirements of the Act on September 1, 2010, the date the claimant stated she became unable to work and met them through June 30, 2012. The claimant has not engaged in substantial gainful activity since September 1, 2010.
>
> 2. The claimant has the following severe impairments: obesity, fibromyalgia, degenerative disc disease to cervical and lumbar spine, chronic bronchitis, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P. Appendix 1.
>
> 3. The claimant's combination of impairments results in the residual functional capacity to perform a reduced range of the sedentary exertional level.
>
> 4. The claimant's subjective complaints are not fully credible.
>
> 5. The claimant is unable to perform past relevant work as cook helper, packaging line attendant, or deli cutter slicer because the demands of those jobs exceed her residual functional capacity.
>
> 6. The claimant was 48 years old on her date last insured, which is defined as younger individual and has a high school education. The claimant's past relevant work is semiskilled or skilled. The issue of transferability of work skills is not material in view of the claimant's age and residual functional capacity.
>
> 7. If the claimant had the capacity to perform the full range of sedentary exertional level, 20 CFR 404.1569 and Rule 201.21, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional impairments do not allow her to perform the full range of the sedentary exertional level, there are a significant number of jobs in the national economy which she could perform, such as ampule sealer, document preparer and telephone quote clerk.
>
> 8. The claimant is not disabled as defined in the Social Security Act at any time through June 30, 2012, the claimant's date last insured.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.     Background**

Plaintiff was 48 years old on the date when her insured status expired on June 30, 2012. She had a high school education; prior to the onset of her alleged disability, she worked as a cook's helper, packaging line attendant, and deli cutter/slicer.

**B.     Medical and Mental Health Evidence**

Plaintiff suffers from obesity, fibromyalgia, degenerative disc disease, bi-polar disorder, depression, migraine headaches, and chronic pain syndrome. In April 2011, Dr. John Kelly, Plaintiff's treating physician, completed a "Fibromyalgia Residual Function Capacity Questionnaire" finding she met the criteria for fibromyalgia. The questionnaire filled out by Dr. Kelly also listed nineteen "moderate" limitations that would continue after treatment and stated she was not capable of even a low stress job. In May 2011, Dr. Kelly filled out a nearly identical questionnaire, in which he also opined that Plaintiff was incapable of even low stress jobs. In May 2012, Dr. Kelly wrote Plaintiff was limited to sitting in one spot for no more than about an hour at a time, for a total of about two hours in an eight hour period due to fatigue with generalized pain. Dr. Kelly also opined that Plaintiff could lift 6-10 pounds, but not repeatedly and no more than four times in an eight hour period.

In March 2011, state agency physician A. Seluzhitskiy, M.D. examined Plaintiff. He concluded that Plaintiff has evidence of chronic neck pain, chronic back pain, degenerative disc and joint disease of the cervical spine, degenerative joint and disc disease of the lumbar spine,

uncontrolled fibromyalgia, severe uncontrolled migraine headaches, severe bipolar disorder, combined type, degenerative disease of the left knee, insomnia and tobacco use disorder. In February 2011, Sharon K. Sacks, Ph.D., conducted a psychological assessment of Plaintiff for the state agency. The report noted that Plaintiff reported a mental health history that required a mood stabilizer most of her adult life, that she presented as slightly lethargic and low in mood, and reported chronic pain that appeared to be dictating her quality of life. She found there had not been much improvement since a similar 2006 exam also conducted by Dr. Sacks for the state agency.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996

WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; see also *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Treating Physician**

Plaintiff argues that the ALJ failed to properly assess the treating physician opinion evidence. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

Plaintiff argues that the ALJ erred in giving little weight to treating physician Dr. John Kelly and failing to address all of Dr. Kelly's opinions. Plaintiff argues that the ALJ failed to set forth a supported reason for finding that Dr. Kelly's opinion was not entitled to controlling weight and that the ALJ failed to properly weigh the opinion evidence. The Commissioner argues that the ALJ gave Dr. Kelly's opinion little weight because it was contrary to the information contained in his examinations.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188 at *3. To be "substantial," conflicting evidence "need only

7

be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [his] reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Dr. Kelly was Plaintiff's treating physician, but the ALJ afforded little weight to Dr. Kelly's opinion. The ALJ stated that he gave little weight to Dr. Kelly's May 2012 opinion that Plaintiff's

8

musculoskeltal impairments limited her from sitting in one spot for more than one hour at a time up to two hours in an 8-hour workday and that her headaches would cause her to miss more than four days of work in a month. The ALJ explained that he gave Dr. Kelly's May 2012 opinion "little weight, as the claimant has not consistently treated her for headaches and thus, finds this to be a non-severe impairment." AR 39. The ALJ also stated that Dr. Kelly's 2012 opinion was inconsistent with his May 2011 opinion, which stated that Plaintiff was unable to do any work and would be unable to perform even a low stress job. AR 39. The ALJ did not mention or assess Dr. Kelly's April 2011 opinion that Plaintiff had numerous moderate limitations. AR 633.

In this case, the ALJ did not discuss the length, nature, and extent of Dr. Kelly's treatment relationship with Plaintiff; whether Dr. Kelly's opinions were sufficiently supported; how consistent his opinion was with the record as a whole; and whether the physician specializes in the medical conditions at issue. The ALJ relied on the fact that Dr. Kelly had not treated Plaintiff consistently for headaches for his decision to give Dr. Kelly's opinion little weight. Not only does the ALJ fail to explain how that impacts Dr. Kelly's opinion regarding the musculoskeltal impairments described in May 2012 or April 2011, it also appears to ignore the references to headaches and prescriptions prescribed for them in multiple visits to Dr. Kelly. AR 349, 352, 356, 359, 367, 496, 517, 524, 550, 550, 550, 555, 563, 613, 645, 648, 374, 406, 409, 411.

Furthermore, the ALJ stated there was no evidence in the record that Plaintiff is restricted from lifting or sitting, since "[d]uring most of the examinations, she had a normal gait and stance, and was able to perform heel, toe and tandem walks normally," without explaining the connection between this finding and the lifting and siting restrictions found by Dr. Kelly. AR 39. The ALJ also failed to explain the inconsistency between Dr. Kelly's May 2012 opinion was inconsistent with Dr.

9

Kelly's May 2011 opinion, because the May 2012 opinion, stating that Plaintiff could not sit for more than two hours in a day, and Dr. Kelly's April 2011 opinion, stating that Plaintiff is unable to do any work and would be unable to perform even a low stress job. The Court does not see how these are mutually exclusive statements that contradict each other, and the ALJ failed to explain the "logical bridge between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. Because the ALJ erred in failing to give a sound explanation for his rejection of the treating doctor's opinions, the Court remands the ALJ's RFC determination. On remand, the ALJ is to fully consider Dr. Kelly's opinions and provide a logical bridge from the evidence to his conclusion.

**B.     Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly analyze Plaintiff's migraine headaches or accommodate her mental limitations in the RFC. The Commissioner argues that the ALJ acknowledged the migraine headaches and considered Plaintiff's mental limitations.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

10

> inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. The Court will not disturb an ALJ's RFC assessment unless (1) the assessment lacks substantial evidence, 42 U.S.C. § 405(g); *see also Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."), or (2) the assessment fails to build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 872; *Young,* 362 F.3d at 1002. For judicial review, the reviewing Court must be able to trace the ALJ's path of reasoning. *Clifford*, 227 F.3d at 874.

1. <u>Migraine Headaches</u>

The ALJ found that the Plaintiff's headaches to be a non-severe impairment because "she has barely treated for headaches." AR 33. The ALJ supports his conclusion with the fact that Plaintiff was never referred to a specialist or ordered a more aggressive treatment protocol for her headaches.

The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Judges have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases). The ALJ may "consider conservative treatment in assessing the severity of a

condition," but should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)).

As discussed above, the Plaintiff was treated for headaches by Dr. Kelly and was prescribed medication for the headaches repeatedly, contrary to the ALJ finding. Further, the Agency's consulting examiner concluded Plaintiff had "severe uncontrolled migraine headaches." AR 465. The ALJ did not cite to any medical evidence as to what additional treatment would be appropriate, except to say that Plaintiff had never been referred to a neurologist or had an MRI. Neither the referral nor MRI are treatments but are merely diagnostic tools. In this case, the ALJ concluded that Plaintiff's headaches were non-severe because she did not receive treatment, but the record indicates treatment and the ALJ does not cite medical evidence that additional treatment was warranted. Instead he substituted his judgment for the doctor's regarding what else could have been done. This matter is being remanded for a new RFC. On remand, the ALJ should analyze Plaintiff's headaches consistent with the record and explain his path of reasoning without making his own independent medical findings.

2.     Mental Limitations

The ALJ acknowledged that Plaintiff has a history of bipolar disorder and depression dating back to 2005. AR 33. In addition, the DDS State agency psychological consultant found "mild limitations in [Plaintiff's] concentration, persistence or pace with no episodes of decompensation." AR 34. The Court is concerned that the ALJ may not have fully considered the combination of Plaintiff's impairments. "[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe." *Getch v. Astrue*, 539 F.3d

473, 483 (7th Cir. 2008) (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."); *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002) ("We remind ALJs that they must not narrowly confine their review to isolated impairments when the record shows that the impairments have some 'combined effect.'"); 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to find disability.).

The ALJ stated generally that he had "considered both severe and non-severe impairments when determining the claimant's medically determinable impairments equal a listing and when assigning the claimants residual function capacity." AR 34. Although he explicitly considered Plaintiff's obesity, the ALJ did not clearly consider the impact of Plaintiff's headaches or mental health on her RFC, nor did he consider how the several impairments in combination with her other impairments on her ability to perform work. The Court is remanding the RFC determination on other grounds, but upon remand the ALJ is directed to explicitly address Plaintiff's headaches and mental limitations and consider how those impairments may aggravate her other impairments and impede her ability to sustain work full time.

**C.     Credibility**

The Plaintiff argues that the Appeals Council erred when it found Plaintiff not fully credible for the reasons identified in the body of the decision, but there was no credibility rationale in the

13

Appeals Council decision. To the extent the Appeals Council adopted the ALJ's credibility assessment, Plaintiff argues that it did not properly examine her credibility under the Social Security Rules. The Commissioner argues that the ALJ identified a number of factors in evaluating her and considered the totality of the record.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is

14

entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ did not find the Plaintiff to be credible and concluded that "[i]n general, the claimant's testimony and allegations with regard to her limitations are disproportionate to the objective findings within the record." AR 40. The ALJ does not identify what these objective findings are, except to state that she is "able to perform a considerable number of activities of daily living" and the treatments for her impairments have "been essentially routine and conservative in nature as there is no evidence of any surgery, physical therapy, TENS unit or epidural injections and it appears that her pain is controlled with oral prescription pain medication." AR 40.

The daily activities the ALJ notes include "maintaining her personal hygiene, cooking, washing dishes, vacuuming, doing laundry and taking care of her two nieces." AR 40. The ALJ does not address Plaintiff's testimony that she gets up with her nieces and makes sure they are dressed for school, but then goes back to sleep. AR 67. Plaintiff also testified she "starts the dishes" but takes breaks to finish them; "attempt[s] vacuuming," but has to stop after pushing the vacuum back and forth "up to five times;" and needs help from her daughter three to four times a week to get in and out of the shower and to put on shoes and socks. AR 67, 69, 70, 71. To the extent that the ALJ is implying that these meager activities indicate an ability to work, the Court notes that the Seventh Circuit Court of Appeals has repeatedly criticized credibility determinations that equate a plaintiff's ability to take care of her personal hygiene, children, or household chores with the ability to work. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Punzio*, 630 F.3d at 712; *Zurawski*, 245 F.3d at 887; *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006). In this case, the ALJ also does not explain how Plaintiff's limited ability to perform these tasks equates to being able to work

15

full time.

It also appears that the ALJ does not find the extent of Plaintiff's impairments credible because of the nature of treatments she received. The ALJ noted that Dr. Kelly only saw the Plaintiff "monthly basis for medication refills" but never recommended a more aggressive treatment and has not referred her to a specialist. AR 40. That Plaintiff was going to monthly appointments for refills for pain treatment and mental treatment re-fills appears to support her testimony rather than discredit it. In August 2010, Dr. Kelly did note that she previously had physical therapy in 2005 and chiropractic treatment in 2006 and they provided no relief. AR 371. The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). Here the ALJ did not question Plaintiff about her failure to seek other treatments, even though the record indicates that she financial constraints kept her from being able to afford certain prescriptions for her mental illness and, as described above, seems to be making his own medical determinations about what treatment Plaintiff should

16

be seeking. *See e.g., Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.")

The ALJ improperly relied on Plaintiff's failure to seek treatment to find her less than credible and failed to address other factors he should have included in his credibility assessment. The Court remands the case for a new credibility determination. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 27] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of January, 2015.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record